614 A.2d 1106

PG PUBLISHING COMPANY d/b/a Pittsburgh
Post–Gazette, Appellant,

v.

COMMONWEALTH of Pennsylvania, Acting By and
Through the DISTRICT ATTORNEY of ERIE
COUNTY, PENNSYLVANIA, Appellee.

COMMONWEALTH of Pennsylvania

v.

David C. COPENHEFER.

Appeal of PG PUBLISHING COMPANY
d/b/a Pittsburgh Post–Gazette.

Supreme Court of Pennsylvania.

Argued March 10, 1992.

Decided Sept. 16, 1992.

W. Thomas McGough, Jr., Debra H. Demody, Reed, Smith, Shaw & McClay, Pittsburgh, John Paul Garhart, Erie, for appellant.

Michael Cauley, Erie, for Reverend John Robinson.

William R. Cunningham, Dist. Atty., Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

# OPINION

ZAPPALA, Justice.

This is an appeal from the Superior Court order 389 Pa.Super. 86, 566 A.2d 857 vacating the order of the Erie County Court of Common Pleas insofar as it allowed the media to have access to search warrants and supporting affidavits executed in connection with an ongoing criminal investigation into the kidnapping and murder of Sally Weiner. The matter was remanded for further proceedings. We granted allocatur to address the issue of whether the press and public have a right of access to inspect and copy search warrants and supporting affidavits. We now affirm.

On June 17, 1988, Pennbank branch manager Harry Weiner received a telephone call playing a recorded message from his wife, Sally, telling him that she had been kidnapped and that the kidnapper demanded ransom money from the bank. Mr. Weiner was given instructions to retrieve a bag from the parking lot outside of the bank. The bag contained additional directions. Instructions that were to follow then by radio were never given. Sally Weiner's body was discovered two days later. She had died as the result of a gunshot wound to the back of her head.

On June 20, 1988, David C. Copenhefer was charged with kidnapping, attempted robbery, and attempted extortion in connection with her death. The investigation into her death continued after Copenhefer's initial arrest, however, and Copenhefer was not charged with the murder until sometime later.[1] During the investigation, the police obtained four search warrants from a district justice.

The Pittsburgh Post–Gazette sought access to the search warrants and supporting affidavits in the interim period between Copenhefer's initial arrest and the date that he was charged with murder. The District Attorney denied access to the documents. On June 28, 1988, the Pittsburgh Post–

---

1. Copenhefer was subsequently convicted of first degree murder. The death sentence was imposed following a jury trial. We affirmed the judgments of sentence on direct appeal. *Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353 (1991).

Gazette filed a motion to intervene requesting authorization to inspect and copy the documents. The District Attorney subsequently filed a petition to seal the search warrants.

After a hearing on June 29, 1988, the trial court entered an order denying the Commonwealth's petition to seal the documents and granting leave to the Post–Gazette to intervene and to inspect and copy the documents. The order was stayed pending the appeal of the Commonwealth.

Cross-appeals were filed by the parties to the Superior Court. The Post–Gazette also filed an Application for Partial Supersedeas or To Vacate the Stay Pending Appeal that was denied by the Superior Court. The Superior Court vacated the order permitting access to the documents on the basis that the trial court had failed to articulate findings of fact considered necessary to a determination of whether the trial court's conclusion regarding the newspaper's access to the documents was adequately supported by the facts. The matter was remanded for further proceedings.

The Post–Gazette asserts that the press and public have a common law right of access to inspect and copy judicial records that extends to search warrants and underlying affidavits. The Post–Gazette relies extensively on this Court's opinion in *Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987), in which we addressed the issue of press and public access to arrest warrants. The Post–Gazette argues that because the search warrants had been executed at the time it sought to intervene, the reasoning in *Fenstermaker* should control, and the search warrants should be subject to a presumptive right of access.

In *Fenstermaker*, the press had filed a motion to intervene and a motion for permission to inspect and copy affidavits of probable cause upon which arrest warrants had been issued after the arraignment of the accused, but prior to any preliminary hearings. The press was permitted to intervene and an order was entered by the common pleas court that recognized a right of public access to affidavits except in limited circumstances. The Commonwealth challenged the trial court's or-

der, asserting that all such affidavits should be closed to public inspection until the guilt determining process was completed.

We held that the threshold inquiry in a case where a common law right of access is asserted is whether the documents are public judicial documents. Documents that are filed with district justices are judicial documents ". . . for the decision to issue a warrant is itself a judicial one reflecting a determination that the affidavits and the information contained therein provide a sufficient basis upon which to justify an arrest." *Fenstermaker,* 515 Pa. at 509, 530 A.2d at 418. A document is not a public judicial document, however, simply because it is generated in connection with judicial proceedings.

In determining whether the affidavits supporting the arrest warrants were public in nature, we addressed in *Fenstermaker* the policy considerations that favored accessibility. We stated that,

> The tradition of keeping proceedings and records of the criminal justice system open to public observation is founded in common law right, and as stated in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579 (1978) (footnotes omitted), "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." There is a presumption—however gauged—in favor of public access to judicial records." Id. at 602, 98 S.Ct. at 1314, 55 L.Ed.2d at 582.

515 Pa. at 508, 530 A.2d at 418. Public access to arrest warrant affidavits fosters important policy considerations, such as discouraging perjury, enhancing police and prosecutorial performance, and promoting a public perception of fairness in the arrest warrant process.

We held that there is a common law right of access to arrest warrant affidavits. We noted that the right to inspect judicial documents is not absolute, however, and supervisory power over such documents rests in the courts. "Where the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the docu-

ment to public inspection, access to the document may be denied." 515 Pa. at 513, 530 A.2d at 420.

. We held that the supporting affidavits for arrest warrants are open to public inspection unless a court order sealing the documents has been entered. The decision regarding access to the arrest warrant affidavits is left to the sound discretion of the trial court. Access to the affidavits may not be denied merely on the request of a district attorney or defense counsel. The trial court may seal the documents, however, on a showing, inter alia, that a defendant's fair trial rights may be affected, that the safety of informants must be protected, or that the integrity of an ongoing criminal investigation may be compromised.

The Commonwealth asserts that the analysis in *Fenstermaker* should not be extended to search warrants because of the distinction between the investigatory and accusatorial stages of the proceedings. While we do not fail to recognize that the purposes of arrest warrants and search warrants differ, the differences do not compel a conclusion that search warrants are not public records once the warrants have been executed.[2]

 A search warrant is a public judicial document. There is no historical tradition of public access to search warrant proceedings. As with arrest warrants, however, the search warrant application is filed with district justices who are part of the Commonwealth's unified judicial system. The documents upon which the district justice bases a decision to issue a search warrant are also judicial in character, for the decision to issue a search warrant is a judicial decision.

 The ex parte application for the issuance of a search warrant and the issuing authority's consideration of the application are not subject to public scrutiny. The need for secrecy will ordinarily expire once the search warrant has been executed. A trial court does have the authority to seal

2. No argument has been made that search warrants and affidavits should be available for public inspection prior to the execution of the warrants.

the documents, however, when warranted by the facts and circumstances of a particular case.

The Commonwealth contends that the trial court erred in denying its request to seal the record in the instant case because there was an ongoing criminal investigation into the murder of Sally Weiner. The testimony of Patrick McHenry, a Pennsylvania State police sergeant who was assigned to the investigation, was offered by the Commonwealth in support of its motion to seal the record. Sergeant McHenry testified as follows:

Q. As a result of your investigation, has anyone been arrested for that death?

A. Not for the death, no, sir.

Q. Has there been an arrest?

A. Yes, sir, there has been.

Q. And what arrest was there, Sergeant?

A. For kidnapping; Mr. David Copenhofer. [sic]

Q. Was Mr. Copenhofer [sic] charged with the homicide of Sally Weiner?

A. No, sir, he was not.

Q. To date has anyone been charged with the homicide?

A. No, sir.

Q. Now, I said homicide, are you treating it as a homicide?

A. Yes, we are.

Q. So, there is an active homicide investigation into the death of Sally Weiner?

A. Yes, sir, there is.

Q. As part of that investigation, have you made an appeal to the public for information?

A. Yes, sir, we have.

Q. As part of that investigation, have you made a determination as to whether the death of Sally Weiner was caused by one or more individuals?

A. We haven't made a definitive conclusion yet. We believe that more than one individual committed the murder.

8

R. 36a–37a. On cross-examination, he testified that approximately seventy investigators, including the FBI, were involved in the investigation at that time.

The trial judge refused to seal the documents, concluding that the Commonwealth had failed to prove that the homicide investigation would be hampered or compromised by release of the documents. The Superior Court vacated the trial court's order and remanded the matter on the basis that the trial court had failed to articulate findings of fact necessary for appellate review.

The Post–Gazette argues that the Superior Court's decision deprives the trial court of its discretion and renders the process of weighing the competing interests meaningless. It asserts that the trial judge's opinion demonstrates that he understood the need to balance the competing interests and that he did so, finding that the Commonwealth had not met its burden of proof. The Post–Gazette interprets the Superior Court's opinion as creating a per se rule that judicial records shall remain closed so long as an investigation remains open.

The Superior Court did not intend to create, or even to suggest, such a per se rule, however. In order for the appellate review of a trial court's discretionary ruling to be meaningful, the appellate court must understand the factual findings upon which a trial court's conclusions of law are based. The Superior Court found that it was unable to determine whether release of the documents would jeopardize the ongoing investigation because the trial court did not articulate findings of facts to support its conclusion that the documents should not be sealed.

It was undisputed that there was an intensive ongoing criminal investigation into the homicide and that no arrest had been made at the time that the Post–Gazette sought access to the search warrants. The Commonwealth had requested that the trial court conduct an in-camera review of the documents. Counsel for the Post–Gazette requested that he be given an opportunity to review the documents also. The Commonwealth would not agree to allow the Post–Gazette's counsel to examine the documents. The Superior Court's inability to

determine whether the trial court abused its discretion in this case stems in large part from the inherent difficulty that the Commonwealth faced in meeting its burden of establishing the need to seal the record without direct reference to the information contained in the search warrants.

■ When the Commonwealth sought to seal the search warrants, the trial court had to balance the right of access to judicial documents with the interests of the Commonwealth in protecting the integrity of the criminal investigation. No balancing process can realistically be undertaken without an in-camera review of the affidavits.[3]

■ It is unclear whether the trial court ever examined the documents in this case. The record indicates that the trial court conducted the hearing without first examining the documents and deferred any determination as to the need to review the documents until completion of the testimony. In its opinion, the trial court did not directly address whether disclosure of the information would hinder the continuing investigation. Without the benefit of findings of fact, the Superior Court was unable to conduct a meaningful appellate review. Accordingly, its remand of the matter was proper.

The order of the Superior Court is affirmed.

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., did not participate in the decision of this case.

___

3. The media and its counsel does not have the right to review the documents for purposes of the evidentiary hearing on the accessibility of the documents.