## In re Public Information Concerning the Death of Jack Fuellhart

C.P. of Clarion County, no. 331 CR 1997.

*William E. Hager III,* for Commonwealth.
*William R. Strong,* for movant.

ALEXANDER, *P.J.,* July 3, 1997—On June 27, 1997, following an in camera proceeding, this court ruled in open court that two affidavits of probable cause and two arrest warrants in magisterial court no. 18-3-02 remain sealed until the two defendants are arrested or until further order of this court. The purpose of this opinion is to aid the appellate court in the event an appeal is taken, and to explain this court's decision so that a precedent for this county for obtaining public access to arrest warrant information prior to an arrest is established and utilized until the Pennsylvania appellate courts have ruled on the issue.

## FACTS AND PROCEDURAL HISTORY

On June 23, 1997, Jack W. Fuellhart was found dead in his residence in Farmington Township, Clarion County, under circumstances which brought about a police investigation. The following day the police filed two affidavits of probable cause in the office of Magistrate Norman Heasley. (Magisterial district 18-3-02.)

When the affidavits of probable cause were filed, a decision was made to seal those documents until the defendants were arrested.

On June 25, 1997, a representative of *Clarion News*, a local newspaper published twice each week, called the undersigned judge from Magistrate Heasley's office and complained that the documents were not being made available to her. A telephone conference was held with the *Clarion News* representative and Magistrate Heasley on separate telephones in the magistrate's office, and with the district attorney and his assistant in the judge's chambers utilizing a speaker telephone. During that telephone conference, the undersigned judge informed all parties that he would not order Magistrate Heasley to make the records available, but that he would hold a proceeding that day, or the following morning, for the purpose of making an independent determination if the Commonwealth's need for secrecy outweighed the right of the public to have access. At that time, the undersigned judge did not request the district attorney to explain the reasons for his request, but explained to all parties that it was the opinion of this court that the Commonwealth did not have the burden of taking its request to the court of common pleas as that burden was described by the Supreme Court in *Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414 (1987), because this court believes that *Fenstermaker* does not apply to public access prior to the arrest, as will be explained in this opinion.

The representative from the *Clarion News*, during that telephone conference, informed the undersigned judge that it would be necessary for her to consult with her superior to decide if the invitation of the judge to consider the matter would be accepted. Soon after this telephone conference, the same *Clarion News* rep-

resentative called the court administrator and told her that no proceeding would be necessary.

On the following day, June 26, 1997, the same representative of the *Clarion News* and her editor contacted the undersigned judge and requested that a proceeding be scheduled as soon as possible. Since the request came after normal business hours, the proceeding was scheduled for the following day, Friday, June 27, 1997 at 1:30 p.m. The undersigned judge gave notice to the district attorney so that the Commonwealth would be available to present its reasons to the court why it wished the files to remain sealed until the arrests were made.[1]

## DISCUSSION

The only direct guidance that this court can find from the Pennsylvania appellate courts concerning the public's right to access of arrest warrant affidavits is the opinion of the Pennsylvania Supreme Court in *Commonwealth v. Fenstermaker, supra.* In *Fenstermaker,* a newspaper filed a motion in the court of common pleas for leave to intervene when it was denied access to arrest warrant affidavits by a magistrate after the arrest had been made. The lower court held that a mag-

---

1. This court is aware that the appropriate means of raising an assertion of public right of access to information regarding criminal proceedings is a motion to intervene filed by the entity asserting that right. See *Fenstermaker, supra* at 504 n.1, 530 A.2d at 416 n.1. This burden was not placed upon *Clarion News,* however, because the undersigned judge believed that it should be handled immediately and because the editor of the *Clarion News* informed the judge during the June 26, 1997 telephone conversation that he was having trouble finding an attorney to represent the newspaper, and that he may appear at the proceedings unrepresented. This court, therefore, accommodated *Clarion News* by orally requesting the Commonwealth to be prepared the following day to justify their request for secrecy.

istrate must permit inspection of affidavits of probable cause unless there has been filed by the district attorney, or defense counsel, a certified statement setting forth the reasons that public inspection should not be allowed. The lower court further held that if the requisite certified statement was filed, the magistrate should seal the file and that any interested person could then appeal to the court of common pleas. The newspaper, the Commonwealth and one defendant appealed to the Superior Court and it affirmed the decision of the lower court. An appeal was then taken to the Pennsylvania Supreme Court and that court reversed, holding that arrest warrant affidavits did constitute public judicial documents and that the public had a common-law right of access to those documents. The court held, however, that this common-law right was not absolute and that "[e]very court has supervisory power over its own records and files . . . ." *Fenstermaker, supra* at 512, 530 A.2d at 420, quoting the United States Supreme Court in *Nixon v. Warner Communications Inc.,* 435 U.S. 589, 597 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570, 579 (1978).

The court in *Fenstermaker* found that the lower court had not adequately protected the public's right to access by permitting the files to be sealed by the magistrate "upon the mere request of a district attorney or defense counsel." *Id.* at 513, 530 A.2d at 420. (emphasis in original)

The court in *Fenstermaker* stated that: "supporting affidavits must be deemed open to public inspection until such times as district attorneys or defense counsel have obtained court orders that the affidavits be sealed from public access. This places upon those wishing to seal affidavits a burden of moving swiftly to obtain the necessary court orders, but it is a burden that is necessary in order to accord due recognition to the

common-law right of the public to secure access to such documents. The decision of the trial court shall be appealable and shall be rendered following a hearing, and the record shall contain an articulation of the factors taken into consideration in reaching a determination as to sealing of the affidavits." *Id.* at 514, 530 A.2d at 420-21.

The attorney for *Clarion News* contends that *Fenstermaker* is authority for his argument that the arrest affidavits in this case are open to public access because the district attorney failed to carry his "burden of moving swiftly to obtain the necessary court orders." It is the contention of the attorney for *Clarion News* that, since the files were sealed by Magistrate Heasley without an order of the court of common pleas, the Commonwealth now has no recourse to maintain their confidentiality.

It is this court's opinion that *Fenstermaker* is not precedent for the contention of *Clarion News,* because the defendant in *Fenstermaker* had already been arrested when the issue of public access arose. Before the Supreme Court in *Fenstermaker* explained the procedure for the post-arrest denial of public access to arrest affidavits, it made the following observation:

"It is to be noted at the outset that there has been no assertion in the instant case that arrest warrant affidavits should be open to public inspection prior to an actual arrest having been made. The issue presented, therefore, concerns only access to affidavits supporting arrest warrants that have already been executed." *Id.* at 505, 530 A.2d at 416.

Furthermore, the portion of the opinion in *Fenstermaker* which is quoted on page 5, *supra*, stating that arrest affidavits "must be deemed open to public inspection until such times as district attorneys or defense

counsel have obtained court orders that the affidavits be sealed from public access," begins with the following phrase: "When arrests have been made pursuant to warrants . . . ." *Id.* at 513-14, 530 A.2d at 420-21.

It is patently clear to this court that the Supreme Court did not intend its ruling in *Fenstermaker* to apply to public access to arrest warrant affidavits before the arrest is made. Unfortunately, this court can find no specific guidance from the Pennsylvania appellate courts on what procedure should be followed before the arrest is made, and therefore this court must speculate what that guidance will be when the issue is addressed.

Additional indirect guidance may be gleaned, however, from the opinion of the Pennsylvania Supreme Court in *PG Publishing Company v. Commonwealth,* 532 Pa. 1, 614 A.2d 1106 (1992).[2] In that case the court considered the question of the right of public access to search warrant affidavits as opposed to arrest warrant affidavits. The court recognized that the purpose of arrest warrants and search warrants differ, but it applied the reasoning of *Fenstermaker* and held that search warrant affidavits are also public records "once the warrants have been executed." See *PG Publishing Company, supra* at 6, 614 A.2d at 1108. The court noted in a footnote that "[n]o argument has been made that search warrants and affidavits should be available for public inspection prior to the execution of the warrants." *Id.* at 6 n.2, 614 A.2d at 1108 n.2.

The court in *PG Publishing Company* also stated:

"The ex parte application for the issuance of a search warrant and the issuing authority's consideration of the

---

2. This case was referred to by this court during the June 27, 1997 proceeding as the "Copenhefer case," because that was the name of the criminal defendant in that case.

application are not subject to public scrutiny. The need for secrecy will ordinarily expire once the search warrant has been executed." *Id.* at 6, 614 A.2d at 1108.

This court believes that *PG Publishing Company* is, by analogy, support for denying the request of *Clarion News* to apply the *Fenstermaker* procedure to public access prior to an arrest.[3]

The attorney for *Clarion News* has argued that there is no distinction between the public's right to access prior to the arrest and the public's right to access after the arrest. This court believes that the Supreme Court will not apply the procedure mandated in *Fenstermaker* to pre-arrest access to arrest warrant information. This opinion is not only based upon the recognition that the court in *Fenstermaker* took great pains to make certain that the case would not be relied upon by persons seeking information prior to the arrest, but because this court recognizes the great differences between the two situations. It is very infrequent that the Commonwealth has reason to request that the public be denied access to arrest affidavits following the arrest. On the other hand, public access to arrest information prior to the arrest can more often than not create problems for the Commonwealth. When post-arrest secrecy is desired it is usually based upon the contention that it is necessary to assure that the defendant is given

---

3. The procedure for sealing search warrant affidavits was made the subject of a rule of criminal procedure shortly after *PG Publishing Company* was decided. See Pa.R.Crim.P. no. 2011 (sealing search warrant affidavits), adopted September 3, 1993, effective January 1, 1994. A review of that rule makes it apparent that the procedure outlined is intended for preserving secrecy in some cases after the warrant has been executed, and that secrecy before execution, the need for which was acknowledged by the court in *PG Publishing Company,* was not changed by Rule 2011.

a fair trial. On the other hand, pre-arrest secrecy is usually desired because the Commonwealth wishes to protect the safety of the police who will make the arrest, prevent the accused from being warned that he is going to be arrested, and to protect the safety of persons cooperating with the police.

This court believes that in many criminal cases the Commonwealth's concern for compromising the apprehension of the defendant, the safety of the arresting officers, and the safety of informing witnesses, will cause it to wish to have arrest warrant affidavits remain confidential until the arrest is made. It would be totally impractical to ask the Commonwealth to present a petition to the court of common pleas in each such case in an attempt to assure this result. Not only is the procedure outlined in *Fenstermaker* too burdensome if imposed upon the police and district attorneys prior to the arrest, but it would create an unnecessary burden upon the courts of common pleas by causing many emergency procedures which would necessarily need to be held before an arrest warrant was obtained. When the Commonwealth is seeking post-arrest secrecy, there should be a heavy burden placed on it and it should be unable to prevail in but a few cases. On the other hand, since pre-arrest secrecy gives rise to completely different issues, the Commonwealth will be successful more often in cases where secrecy is requested prior to the arrest.[4]

---

4. Judicial cases considering the public right of access to criminal court records are almost exclusively limited to post-arrest secrecy. See *e.g.*, Public Access to State Courts Records, 84 ALR3d 598, 639-44. It is reasonable to assume that the sparsity of pre-arrest judicial decisions is, in part, caused by two factors. First, the news media is often unaware that an arrest warrant has been issued until an arrest has been made, and, secondly, the issue becomes moot

If the procedure of *Fenstermaker* is placed upon the Commonwealth for pre-arrest secrecy, it is the opinion of this court that the Commonwealth, as a practical matter, will not be able to comply with that demand and many arresting police officers will then be forced to engage in a race with the news media if they wish to make an arrest before the defendant has learned that he is about to be arrested and before he learns who gave the police the information. In a free society it is necessary that the courts place many obstacles in the path of the police in their apprehension of criminals, but this court does not believe that a reasonable public will demand that a defendant be forewarned of his arrest.

The evils which can be created by permitting public access to arrest warrant affidavits before the affidavits were recognized by the legislature of the State of Indiana when it adopted a statute attempting to punish by contempt anyone, including the press, who disclosed the name contained in a sealed information before the suspect is arrested. See *Worrell Newspapers of Indiana Inc. v. Westhafer,* (CA7 Ind.) 739 F.2d 1219 (1984), *affirmed,* 469 U.S. 1200, 84 L.Ed.2d 309, 105 S.Ct. 1155. While that Indiana statute was held by the federal court to be too broad to pass constitutional standards, its adoption accentuates the chasmic distinction between pre-arrest secrecy and post-arrest secrecy. It is unlikely that any legislature will ever adopt a similar statute attempting to discourage disclosure after the suspect is arrested.

This court does not believe that any Pennsylvania appellate court will rule that the procedure outlined in *Fenstermaker* be placed upon the Commonwealth

---

when the arrest is made making it difficult for the aggrieved party to obtain appellate review.

for secrecy prior to the arrest. This court believes, however, that it is much more likely that the appellate courts of Pennsylvania will deny all public access to arrest warrant affidavits prior to the arrest, or at least for a reasonable time between the issuance of the warrant and the arrest.

It is very possible that if an error was made by this court, it was the Commonwealth that was aggrieved. It is a reasonable contention that this court should have concluded from an analysis of *Fenstermaker* and *PG Publishing Company* that the ex parte issuing of an arrest warrant is not "subject to public scrutiny" at least for a reasonable period of time prior to the arrest. Certainly the delay to arrest in this case, which was three days at the time of the proceeding before this court, was reasonable and unavoidable.

If the court would have made this conclusion, the Commonwealth would not have been placed in the position on June 27, 1997 of justifying something it may have an absolute right to do, *i.e.*, obtain an arrest warrant and seek the suspect without public scrutiny. The Pennsylvania appellate courts may very well so hold, and a reasonable argument can be made, that the Pennsylvania Supreme Court has strongly indicated that result by dicta in both *Fenstermaker* and in *PG Publishing Company*.

An appellate court could, however, avoid accepting either extreme position and endorse a procedure which would permit the magistrate to seal the file prior to the arrest when he is requested to do so by the Commonwealth, but give the public an opportunity to challenge the need for secrecy in any particular case by asking the court of common pleas to compel the Commonwealth to convince the court that the need for secrecy in that case outweighs the right of the public

to know. The only burden which this procedure would place upon the public, usually the news media, is the one of coming forward with the complaint. The burden of convincing the common pleas judge would still be upon the Commonwealth.

It was this procedure which was explained by the undersigned judge to the parties during the June 25, 1997 telephone conversation and it was this procedure which was followed in this case. The burden of bringing the problem to the common pleas court was placed upon *Clarion News*; it carried that burden by asking the judge to hold the proceeding on June 27, 1997; and the Commonwealth was then forced to appear before this court and convince it that the reasons for secrecy in this case outweighed the public's right to access. This court did not require *Clarion News* to file a motion to intervene, which would have been the appropriate method and should have been imposed upon *Clarion News* (see footnote 1, *supra*, for reasons why this informal shortcut was taken), but in the event that any case arises in this county in the future, while the procedure herein outlined has not been altered by an appellate decision, the entity complaining on behalf of the public will be required to file a motion for leave to intervene.

If the appellate courts adopt a pro se rule that arrest warrant affidavits are never subject to public scrutiny until the arrest is made, the public will be denied access to the court in the exceptional case where the public's right to know outweighs the reasons for secrecy even prior to an arrest. The procedure used in this case for pre-arrest secrecy, however, is symmetrical with the *Fenstermaker* procedure for post-arrest secrecy, which gives the Commonwealth access to the court in the exceptional case where secrecy should be maintained even after the arrest.

If this court is wrong, however, and the Pennsylvania appellate courts do apply the procedure outlined in *Fenstermaker* to pre-arrest cases, *Clarion News* has not been aggrieved by the procedure used in this case. By placing the burden upon *Clarion News* to request the review of Magistrate Heasley's decision, the ultimate decision by this court was not changed. Had the issue been placed before this court by the Commonwealth's filing the petition mandated by *Fenstermaker,* the same result would have been reached. In either instance, this court believes that the burden must be placed upon the Commonwealth to prove, in the in camera session, that the files should remain sealed. What took place in the in camera session would have been no different regardless of how the matter came before the court.

The attorney for *Clarion News* has complained that the evidence and argument was presented to this court in his absence, and that the normal features of an adversarial procedure were absent. This court empathizes with the frustration experienced by the attorney for *Clarion News* since ex parte proceedings are usually avoided in any court. This court believes, however, that it is totally inconsistent with denying public access to any document to permit the attorney representing the entity requesting access to hear what it is that his client is not being permitted to hear.

While the right of *Clarion News* in this case is based upon the common-law right to access of judicial records and not upon any federal or state freedom of information statute or right to know statute, a general description of the proceedings under those statutes is applicable to the in camera proceeding held before this court. The following is a description of such a proceeding:

"In camera proceedings, particularly in FOIA cases involving classified documents, are usually nonadver-

sarial and ex parte, with the requester denied even this limited access to the documents which he or she desired to obtain. As a general rule, counsel for the plaintiff may not be present when the judge reviews the documents in camera . . . ." 37A Am.Jur.2d, Freedom of Information Acts §564.

This court does not intend, in this opinion, to discuss specifically what was presented to it in camera to cause its ruling. A complete record was made of the in camera proceeding and an appellate court may review that record to determine if this court abused its discretion in permitting the magistrate's decision to seal the documents to continue until the arrest was made. As the undersigned judge announced in open court, following the in camera proceeding, the general reasons for the decision were (1) to avoid obstructing the apprehension of the defendants; (2) to assure the safety of the police; and (3) to assure the safety of the persons cooperating with the police in apprehending the defendants. The specific concerns which were voiced by the Commonwealth, and accepted by this court, appear in the sealed transcript.

This court recognizes that the Commonwealth's case for secrecy was stronger on June 24, 1997 when the magistrate first sealed the file than the case it presented to this court on June 27, 1997. This court also recognizes that the Commonwealth had a stronger case on June 25, 1997 when the representative of *Clarion News* asked this court to reverse the magistrate's ruling. The reason that the Commonwealth's case was not as strong on June 27, 1997 as it had been on the earlier dates was that some of the information which the police and the district attorney did not want to be divulged had been obtained by a daily newspaper, published in an adjoining county, through its own investigation. This information

was published by that newspaper on June 25, June 26, and June 27, 1997. These publications served to strengthen the case of *Clarion News* and this court took judicial notice of those newspaper articles prior to the beginning of the in camera proceeding. This court found, however, during the in camera proceeding that there still remained some facts to which the public should not have access until the defendants were apprehended, and that the known facts and the unknown facts were so intertwined that reasonable redaction was not possible.

This court also recognizes that the totality of the circumstances surrounding this case is constantly evolving and that that evolution may at some point cause the contentions of *Clarion News* to outweigh those of the Commonwealth. This shift in the scales could take place by the continued independent discovery of additional facts or by the mere lapse of time. It is therefore not intended by the following order that *Clarion News*, or any other entity representing the public, is precluded from returning to this court if it believes that the circumstances have changed from those which existed on June 27, 1997 when the decision was made.

The following order is intended to prevent public access to the files in the magistrate court until the arrests are made. The order is not intended in any way to attempt to prohibit, or even discourage, public dissemination of facts concerning this case. If any entity can obtain those facts without having access to the judicial file, they need only be guided by their own standards in determining what to publish. Hence, the following order, which order was entered orally in open court on June 27, 1997:[5]

---

5. After dictating this opinion on June 29, 1997, the undersigned judge learned that the defendants had been arrested, thereby causing

84

## ORDER

Now, July 3, 1997, for the reasons expressed in open court on June 27, 1997, and later expressed in the foregoing opinion, the records of magisterial court 18-3-02 in the cases at docket no. CR-82 & 83-97 and OTN no. E 612096-2 & E 612097-3 shall remain sealed until the arrests of the defendants in those cases have been made or until further order of this court.

the files to be automatically open to public access and causing the issue of their disclosure to be moot. The *Clarion News* and/or the Commonwealth may nevertheless wish to appeal this decision in hope that the appellate courts will view this case as one of the "rare instances where exceptional circumstances exist or where questions of great public importance are involved" and make a determination of the issue of pre-arrest public access to arrest affidavits despite the mootness of the issue of disclosure in this case. See *Ridley Park Shopping Center Inc. v. Sun Ray Drug Co.*, 407 Pa. 230, 232, 180 A.2d 1, 3 (1962).