J-A16040-16

2018 PA Super 56

IN RE: 2014 ALLEGHENY COUNTY : IN THE SUPERIOR COURT OF
INVESTIGATING GRAND JURY : PENNSYLVANIA
:
:
APPEAL OF: WPXI, INC. : No. 950 WDA 2015

Appeal from the Order May 22, 2015
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-MD-0003179-2015

BEFORE:    SHOGAN, OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:    **FILED MARCH 14, 2018**

This matter comes before us on remand from the Pennsylvania
Supreme Court, following its entry of an order reversing our determination
of mootness of the appeal of WPXI, Inc. (WPXI). WPXI appeals from the
May 22, 2015 order that denied its motion to intervene and obtain access to
a search warrant and sealing order issued in connection with the 2014
Allegheny County investigating grand jury.[1] We affirm.

The following from our prior opinion summarizes the relevant
underlying facts.

> In early 2015, allegations of improper sexual relations between
> faculty and students at Allegheny County's Plum High School
> became public. In covering the ongoing news story surrounding
> the contentions and resulting grand jury investigation into them,
> WPXI, a Pittsburgh-based television station, presented to the
> trial judge serving as the supervising judge of the grand jury a
> motion to intervene and to access public judicial records.

---

[1] WPXI's requests were denied in open court on May 22, 2015; however, the
docket does not reflect that an order was filed. We treat May 22, 2015 as
the date of entry of the appealed-from order pursuant to Pa.R.A.P. 108(a)(1)
("The day of entry of an order may be the day of its adoption by the court…
as required by the actual circumstances.").

*Retired Senior Judge assigned to the Superior Court.

Therein, WPXI averred, upon information and belief, that the trial court had on May 18, 2015, issued (1) a warrant authorizing a search at the Plum High School Administration Building, and (2) an order sealing the affidavit of probable cause that supported the search warrant.[1] After hearing argument on the motion on May 22, 2015, the trial court denied WPXI's motion.

_____

[1] WPXI was not seeking access to the supporting affidavit or any attachment identifying suspected juvenile victims.

*In re 2014 Allegheny Cty. Investigating Grand Jury*, 147 A.3d 922, 923 (Pa. Super. 2016) (internal citations and quotation marks omitted).

WPXI timely filed an appeal, which we *sua sponte* dismissed as moot on the basis that WPXI had otherwise obtained the documents in question when they were made public by another source. *Id.* at 924. Our Supreme Court determined that this Court lacked sufficient information to make the mootness determination, and remanded for us to consider the merits of the appeal. *In re 2014 Allegheny Cty. Investigating Grand Jury*, 173 A.3d 653 (Pa. 2017).

The questions before us are as follows.

1. Whether the lower court erred in not granting WPXI's motion to intervene.

2. Whether the lower court erred and abused its discretion in denying WPXI's motion for access to:

(a) the application for search warrant and authorization (*i.e.*, the search warrant) for a search at Plum School District High School/Administrative Building, when the search warrant was issued by the court on May 18, 2015 and executed prior to WPXI's motion to intervene and obtain access, and WPXI's motion for access did not

- 2 -

seek any materials identifying any suspected juvenile victims, and

> (b) the related order of court dated May 18, 2015 that sealed only the attachment to the search warrant application and affidavit for probable cause identifying suspected juvenile victims (which order of court was not itself sealed by an order entered on the record).

3. Whether the lower court erred in not making specific findings as to any compelling governmental interests or public and private interests that would outweigh WPXI's and the public's right to access.

WPXI's Brief at 4 (unnecessary capitalization omitted).

We begin with the propriety of WPXI's request to intervene and the trial court's denial thereof. "The filing of a motion to intervene in a criminal case by the news media has long been recognized by [our Supreme] Court as an appropriate means of raising assertions of public rights of access to information regarding criminal case proceedings."[2] ***Commonwealth v. Fenstermaker***, 530 A.2d 414, 416 n.1 (Pa. 1987). "Intervention of this type may properly be termed *de bene esse*, to wit, action that is provisional in nature and for the limited purpose of permitting the intervenor to file a motion, to be considered separately, requesting that access to proceedings or other matters be granted." ***Id.***

Thus, under ***Fenstermaker***, WPXI should have filed a motion seeking only to intervene. The trial court should have granted it, after which WPXI

---

[2] "Access rights of the news media, and of the general public, are identical in scope." ***Fenstermaker***, 530 A.2d at 416 n.1.

- 3 -

should have filed its motion to access the documents in question. The trial court then should have scheduled a hearing on the motion for access, and ruled on the merits of that motion.

Instead, WPXI filed a single motion: a "motion to intervene and obtain access to public judicial records." Motion to Intervene, 5/21/2015. The following day, the trial court held a hearing on the motion, at which it considered WPXI's standing as well as the substance of WPXI's request for access to the requested documents. N.T., 5/22/2015, at 11-15. At the conclusion of the hearing, the trial court denied WPXI's motion on several alternative bases. *Id.* at 14-15.

To the extent that it denied the intervention portion of WPXI's motion, the trial court did err. ***See***, ***e.g.***, ***Fenstermaker***, 530 A.2d at 416 n.1. However, because the court held a hearing at which WPXI presented the substance of its request, and the court ruled on the merits thereof, WPXI *de facto* was permitted to intervene. Accordingly, although there was technical error, no relief is warranted.

We next consider whether the trial court erred in denying WPXI's claims of access to the grand-jury-related documents. WPXI sought to obtain the search warrant and sealing order pursuant to both common law and the First Amendment. ***See*** N.T., 5/22/2015, at 8.

Neither WPXI nor the Commonwealth cites any Pennsylvania decision addressing the public's right (or lack thereof) to access or copy grand jury

documents or search warrant documents issued in connection with a grand jury investigation. Nor have we found any. In deciding this issue of first impression, we first examine cases that establish the legal principles applicable to requests for other judicial documents, and then consider how the special nature of grand jury proceedings impacts the analysis of those principles.

Our Supreme Court set forth the standard for establishing the common law right of access to public judicial documents in **Fenstermaker**, a case in which a newspaper sought access to arrest warrants and supporting affidavits. "The threshold inquiry … is whether the documents sought to be disclosed are public judicial documents, for not all writings connected with judicial proceedings constitute public judicial documents." **Fenstermaker**, 530 A.2d at 418. There is a presumption of openness where public judicial documents are involved; however, the right is not absolute. **Id.** at 420. Access to public judicial documents may be denied when the presumption "is outweighed by circumstances warranting closure of the document to public inspection[.]" **Id.**

Applying the above test to the arrest warrants at issue, the Court concluded that the documents were judicial because they informed the decision to issue an arrest warrant. Further they were public because procedural rules provide for the filing of warrants and affidavits, making them part of the permanent public record of the case. **Id.** at 418-19.

Having concluded that the requested documents were public judicial documents, the Court held that the newspaper should have been granted access to the arrest warrant affidavits:

> When arrests have been made pursuant to warrants, the supporting affidavits must be deemed open to public inspection until such times as District Attorneys or defense counsel have obtained court orders that the affidavits be sealed from public access. This places upon those wishing to seal affidavits a burden of moving swiftly to obtain the necessary court orders, but it is a burden that is necessary in order to accord due recognition to the common law right of the public to secure access to such documents. The decision of the trial court shall be appealable and shall be rendered following a hearing, and the record shall contain an articulation of the factors taken into consideration in reaching a determination as to sealing of the affidavits.

*Id.* at 420-21.

Our Supreme Court again considered the issue of the common law right of access in *PG Publishing Company v. Commonwealth*, 614 A.2d 1106 (Pa. 1992). In that case, the Pittsburgh Post-Gazette sought access to search warrants and supporting affidavits after the warrants had been executed, but before the target had been charged with murder. *Id.* at 1107. After examining *Fenstermaker*, and recognizing "that the purposes of arrest warrants and search warrants differ," the Court nonetheless concluded that "the differences do not compel a conclusion that search warrants are not public records once the warrants have been executed." *Id.* at 1108.

> A search warrant is a public judicial document. There is no historical tradition of public access to search warrant proceedings. As with arrest warrants, however, the search

warrant application is filed with district justices who are part of the Commonwealth's unified judicial system. The documents upon which the district justice bases a decision to issue a search warrant are also judicial in character, for the decision to issue a search warrant is a judicial decision.

The *ex parte* application for the issuance of a search warrant and the issuing authority's consideration of the application are not subject to public scrutiny. The need for secrecy will ordinarily expire once the search warrant has been executed.

**Id.** at 1108.

Our Supreme Court once more took up the issue in **Commonwealth v. Upshur**, 924 A.2d 642 (Pa. 2007) (Opinion Announcing the Judgment of the Court), a case in which WPXI sought access to an audiotape that was played at Upshur's preliminary hearing but was not entered into evidence. **Upshur**, 924 A.2d at 645. Justice Saylor, announcing the judgment of the Court, first revisited the pertinent precedent, noting generally that "the public right to review and copy judicial records and documents provides an important check on the criminal justice system, ensuring not only the fair execution of justice, but also increasing public confidence and understanding." **Id.** (citing **Richmond Newspapers, Inc. v. Virginia**, 448 U.S. 555, 572 (1980) (plurality opinion) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.")). In the review of the case law, the plurality, citing **Fenstermaker** and **PG Publishing**, observed: "Certainly… any item that is filed with the court as part of the permanent

record of a case and relied upon in the course of judicial decision-making will be a public judicial record or document." *Id.* at 648. The plurality also noted as follows:

> The constitutional presumption of openness extends to pretrial proceedings, including preliminary hearings. Preliminary hearings, like other pretrial proceedings, are an important part of the criminal justice process. Evidence presented at preliminary hearings and determinations made at pretrial proceedings may dictate whether a full trial will be held. Indeed, preliminary hearings, though often waived, may at times provide the only opportunity for the public to observe the criminal process because the vast majority of criminal cases are disposed of via pleas.[]

*Id.* at 649 n.6 (citations omitted).

Applying these principles to the facts before it, Justice Saylor determined that, although the tape "was never filed with the court, entered into evidence, or otherwise made part of the record[,]" *id.* at 649, it was as a matter of law a public judicial document. While the status of a document as having been made part of the record is relevant, it is not dispositive: "The common law right of access is based upon the public's interest in knowing about events as they actually transpire and not simply on what is filed with a court or formally admitted into evidence." *Id.* The tape had been presented at a preliminary hearing and thus formed "the basis of the magistrate district judge's legal decision as to whether the charges [were] held for trial, and thus … was clearly the type of material upon which a judicial decision is based." *Id.* at 650-51. Further, the plurality indicated, "the disclosure of

the tape recording at the open preliminary hearing and in the form of a transcript, regardless of potential admissibility at trial, renders the Commonwealth's assertion that the tape is not a public document untenable." *Id*. at 651.

We next review the impact of the First Amendment on access to court documents.[3]  The United States Supreme Court in **Richmond Newspapers**, noting the presumption of openness to criminal trials, concluded that the First Amendment rights include the right of the public to attend such trials. 448 U.S. 573, 580.  This is based upon, *inter alia*, the following interests.

> 1. Public access to criminal proceedings promotes informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system, serving an important educative interest;
>
> 2. Public access to criminal proceedings gives the assurance that the proceedings were conducted fairly to all concerned and promotes the public perception of fairness.  Public confidence in and respect for the judicial system are served only by permitting full public view of the proceedings;
>
> 3. Public access to criminal proceedings has a significant community therapeutic value because it provides an outlet for community concern, hostility, and emotion;
>
> 4. Public access to criminal proceedings serves as a check on corrupt practices by exposing the judicial process to public

---

[3] Although First Amendment claims were before our Supreme Court in **Fenstermaker** and **Upshur**, the Court declined to address them after it determined that there was a right of access under the common law.  **See**, **e.g.**, **Upshur**, 924 A.2d at 653 n. 11 ("As the common law right of access is dispositive in the present case, we need not address any constitutional claims that have been advanced."); **Fenstermaker**, 530 A.2d at 419 (same).

scrutiny, thus discouraging decisions based on secret bias or partiality;

5. Public access to criminal proceedings enhances the performance of all involved; and

6. Public access to criminal proceedings discourages perjury.

*United States v. Kemp*, 365 F.Supp.2d 618, 627-28 (E.D. Pa. 2005) (citing generally *Richmond Newspapers*).

In *Press-Enterprise Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1 (1986) (*Press-Enterprise II*), the Court applied *Richmond Newspapers* to preliminary hearings, establishing that the existence of a First Amendment right of access initially is based upon consideration of "whether the place and process have historically been open to the press and general public," *Press-Enterprise II*, 478 U.S. at 8, and "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 9. In other words, "[t]his test asks whether (1) experience and (2) logic favor public access." *In re Newark Morning Ledger Co.*, 260 F.3d 217, 220 n.6 (3d Cir. 2001) (citing *Press-Enterprise II*). "If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." *Press-Enterprise II*, 478 U.S. at 9.

"But even when a right of access attaches, it is not absolute." *Id.* "[The] presumption [of access] may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values

and is narrowly tailored to serve that interest." ***Kemp***, 365 F.Supp.2d at 628 (internal quotation marks and citation omitted). "The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. Further, the court must in a timely manner state its reasons on the record for rejecting alternatives to closure." ***Id.*** at 628-29 (internal citations and quotation marks omitted).

In sum, to prevail on its common-law claim, WPXI initially had to show that the documents it sought were public judicial documents; then, if the Commonwealth wished to have them sealed, the trial court was required to balance the public's right of access with the Commonwealth's interests in preventing disclosure. To prevail on its First Amendment claim, WPXI had to establish that experience and logic favor the public's having access to the documents, after which the Commonwealth could nonetheless prevent access upon showing an overriding government interest narrowly tailored to serve that interest. Both claims require the trial court, in deciding the issue, to make specific factual findings that support its rationale.

As we noted above, we are unaware of any Pennsylvania case that applied these legal principles to a request to access or copy search warrant documents issued in connection with a grand jury investigation. Accordingly, we shall next examine the nature of grand jury proceedings in

general, and consider how other jurisdictions have ruled upon a claim of access to grand-jury-related documents.

"In Pennsylvania, grand jury proceedings have traditionally been conducted in secrecy, and for a salutary reason. The secrecy of grand jury proceedings is indispensable to the effective functioning of a grand jury." *In re Dauphin Cty. Fourth Investigating Grand Jury*, 19 A.3d 491, 502 (Pa. 2011) (internal quotation marks and citation omitted). This secrecy… is designed

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*In re Investigating Grand Jury of Philadelphia Cty.*, 437 A.2d 1128, 1130 (Pa. 1981) (internal quotation marks and citation omitted).

The secrecy of investigating grand jury proceedings is further mandated by rule and statute. The Rules of Criminal Procedure state that, except under circumstances not relevant here, "the court shall control the

- 12 -

original and all copies of the transcript and shall maintain their secrecy. When physical evidence is presented before the investigating grand jury, the court shall establish procedures for supervising custody." Pa.R.Crim.P. 229. Although witnesses are not precluded from disclosing their own testimony, with exceptions not relevant here,

> a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court. All such persons shall be sworn to secrecy, and shall be in contempt of court if they reveal any information which they are sworn to keep secret.

42 Pa.C.S. § 4549(b).

Hence, while the cases discussed above were based upon a presumption of access flowing from the historical tradition and constitutional requirements of open courts and public trials, the opposite is true of grand jury proceedings. Indeed, as the trial court noted,

> Even the *Upshur* case cited by WPXI cites to the U.S. Supreme Court case *Press*[-]*Enterprise* [*II*], and [that case] states,
>
> > Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."

N.T., 5/22/2015, at 12 (quoting **Press-Enterprise II**, 478 U.S. at 8-9 (quoting **Douglas Oil Co. v. Petrol Stops Northwest**, 441 U.S. 211, 218 (1979))).

Given this stark difference between grand jury proceedings on one hand, and criminal trials at their various stages on the other, it is unsurprising that courts in other jurisdictions that have considered requests for public access to documents related to grand jury proceedings have held that denial of access was appropriate.

For example, in **United States v. Smith**, 123 F.3d 140, 146 (3d Cir. 1997), the Third Circuit considered whether the district court erred in disallowing newspapers access to a sentencing memorandum that contained grand jury material, as well as the briefs and hearing on whether the government had violated the federal rule against disclosure of grand jury material when it had (for a time) made the sentencing memorandum available to the public. After determining that any issues related to the sentencing memorandum were moot because the newspapers had already obtained copies of it, the court affirmed as to the briefs containing grand jury material, holding "there is no presumptive First Amendment or common law right of access to them if secret grand jury material would be disclosed by that access." **Smith**, 123 F.3d at 143. The **Smith** court offered the following discussion about grand jury secrecy.

The longstanding rules preserving grand jury secrecy are well established. As the Supreme Court explained in ***Douglas Oil***, "[s]ince the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." The secrecy of grand jury proceedings is a necessary incident to the proper functioning of the grand jury system. The Court has:

> noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Moreover, these interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

Thus, ***Douglas Oil*** implicitly makes clear that grand jury proceedings are not subject to a First Amendment right of access under the test of "experience and logic." Historically, such proceedings have been closed to the public. Moreover, public access to grand jury proceedings would hinder, rather than further, the efficient functioning of the proceedings.

Not only are grand jury proceedings not subject to any First Amendment right of access, but third parties can gain access to grand jury matters only under limited circumstances. Even after the grand jury has concluded its proceedings, a

> private party petitioning for access to grand jury materials must show that the need for [access] outweighs the public interest in secrecy, and ... the burden of demonstrating this balance rests upon the private party seeking disclosure.

*Smith*, 123 F.3d at 148 (some citations and quotation marks omitted).

Examining the briefs and hearing at issue in *Smith*, the court noted that the federal rules of grand jury secrecy apply to "anything which may reveal what occurred before the grand jury," including "[r]ecords, orders and subpoenas *relating* to grand jury proceedings…." *Id.* at 148, 149 (internal quotation marks omitted; emphasis added in *Smith*). Because the briefs and hearing related to a grand jury proceeding, and might have revealed what happened in the grand jury room, they were subject to the same secrecy as the proceedings themselves. *Id.* at 149-50. Hence, there was no First Amendment right to access the briefs and hearing. Similarly, the court found no common law right of access: "Unlike judicial records to which a presumption of access attaches when filed with a court, grand jury materials have historically been inaccessible to the press and the general public, and are therefore not judicial records in the same sense." *Id.* at 156.

Another federal circuit court of appeals held that a Massachusetts statute that automatically sealed records when the grand jury decided not to issue an indictment withstood a First Amendment challenge by the Boston Globe, reasoning as follows:

The public has a First Amendment right to judicial documents and records because without them a full understanding of judicial proceedings would be impossible. Accordingly, the First Amendment attaches only to those records connected with proceedings about which the public has a right to know. The public has no right to attend grand jury proceedings, and therefore, has no right to grand jury records. In contrast to criminal trials, grand jury proceedings have traditionally been closed to the public and the accused, and the Supreme Court has stated repeatedly that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings….

***Globe Newspaper Co. v. Pokaski***, 868 F.2d 497, 509 (1st Cir. 1989). The court thus concluded that neither the experience nor the logic prong was satisfied.

In ***In re Gwinnett Cty. Grand Jury***, 668 S.E.2d 682 (Ga. 2008), the Supreme Court of Georgia held that "certain materials used by the grand jury in its civil investigation" did not constitute court records subject to public inspection under the state's court rule USCR 21. The rule, consistent with the Pennsylvania law discussed above, provided that all court records are public and presumptively will be accessible to the public. *Id.* at 683. The court explained:

Documents and recorded testimony received by a grand jury in pursuit of its civil duties are not subject to disclosure under USCR 21 because they do not fall within that which USCR 21 embodies: they are not court records to which the public and press in Georgia have traditionally enjoyed access.

* * *

Accordingly, even if we assume that evidence and testimony presented to a grand jury in pursuit of its civil duties

> are records of the superior court, they are not court records subject to USCR 21 because the press and public have not traditionally enjoyed access to such material due to the preservation of the secrecy of grand jury proceedings.
>
> … [D]ocuments and recorded testimony presented to and maintained by the grand jury and not included in the presentment made in open court are not court records under USCR 21 and therefore do not carry the presumption of public access.

*Id.* at 684-85 (internal citations, quotation marks, and footnote omitted).

Mindful of all of the above, we turn to the documents requested by WPXI in this case.[4] Again, those documents are the application for a search warrant and the authorization thereof, as well as the court's order that sealed attachments thereto. We begin our review with the threshold issue of whether the search warrant and court order sought by WPXI are (1) public judicial documents for purposes of the common law right of access, and/or (2) documents for which experience and logic favor public access under the First Amendment. We conclude that they are not.

The search warrant application submitted to the supervising judge of the grand jury in connection with the grand jury investigation, the resulting warrant, and the order that sealed the attachments to the warrant application clearly are judicial documents under our Supreme Court's

---

[4] We exercise plenary review over the questions of law of whether the common law or the First Amendment creates a presumptive right of access to the documents in question. *Upshur*, 924 A.2d at 647; *Smith*, 123 F.3d at 146.

- 18 -

pronouncements. The documents in question were either used by a judge as bases for a decision or embodiments of the judicial decisions made.

However, the documents are not **public** judicial documents. As the law discussed above makes clear, grand jury proceedings are unlike the proceedings at issue in *Fenstermaker*, *PG Publishing*, or *Upshur* to which a constitutional presumption of openness attaches. Secrecy "is indispensable to the effective functioning of a grand jury." *In re Dauphin Cty. Fourth Investigating Grand Jury*, 19 A.3d at 502. Pennsylvania law includes statutes, rules, and cases that impose and maintain ongoing secrecy regarding grand jury proceedings. Granting WPXI access to the information and items sought via the subpoena would defeat the purpose of secrecy: it would make public the subjects of the ongoing grand jury investigation, disclose which provisions of the crimes code the grand jury was investigating, and reveal to potential witnesses, targets, and persons who might have access to similar materials stored at a different location the precise nature of the items relevant to the investigation.

Furthermore, grand jury documents are not filed with the clerk of courts; rather, the court controls the documents to maintain their secrecy. Pa.R.Crim.P. 229. Simply put, there is not, nor has there ever been, any public access to or oversight of grand jury proceedings such that a presumption of openness attaches to the documents to which WPXI sought access. Thus, WPXI's common law claim fails as a matter of law.

The First Amendment experience-and-logic test yields the same result. As succinctly explained by the Third Circuit, the Unites States Supreme Court's decision in

> **Douglas Oil** implicitly makes clear that grand jury proceedings are not subject to a First Amendment right of access under the test of "experience and logic." Historically, such proceedings have been closed to the public. Moreover, public access to grand jury proceedings would hinder, rather than further, the efficient functioning of the proceedings.

**Smith**, 123 F.3d at 148. Hence, as a matter of law, no First Amendment right of public access attaches to the grand jury documents WPXI sought to inspect and copy in the instant case.

Because our resolution of the threshold legal questions under both the common law and the First Amendment tests establishes that no public right of access attached to the documents sought by WPXI, we need not consider WPXI's final question of whether the trial court erred in not making findings of fact to support its alternative holding that the Commonwealth's interest in maintaining the secrecy of the documents outweighed any such right.[5]

---

[5] "In order for the appellate review of a trial court's discretionary ruling to be meaningful, the appellate court must understand the factual findings upon which a trial court's conclusions of law are based." **PG Publishing**, 614 A.2d at 1109. Here, the trial court did not offer its case-specific reasoning on the record or in its opinion, instead stating "that other factors existed in support of nondisclosure in this case which this [c]ourt declined to state on the record out of concern for violating the secrecy of the underlying grand jury proceedings." Trial Court Opinion, 7/23/2015, at 5. Had we reached the opposite conclusion on the threshold legal issue, we would have been required to remand the case for the trial court to disclose its reasoning. **See Upshur**, 924 A.2d at 646 ("As the court did not develop its reasoning with

J-A16040-16

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/14/2018

---

regard to [its exercise of discretion] in its Rule 1925(a) opinion, … we remanded the case for preparation of an opinion specifying the rationale, together with any necessary factual findings, supporting the discretionary component of its ruling.").   For the sake of judicial economy, a trial court faced with such concerns should detail its findings and rationale for this Court and then seal the opinion.

- 21 -