530 A.2d 414

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Timothy S. FENSTERMAKER, Edward Grey and Brent A. Smith, Call-Chronicle Newspapers, Inc. (now known as the Morning Call, Inc.), Appellee.**

Supreme Court of Pennsylvania.

Argued April 8, 1987.

Decided Aug. 25, 1987.

502

William H. Platt, Dist. Atty., for appellant.

Wallace C. Worth, Jr., Allentown, for Fenstermaker.

Malcolm J. Gross, Allentown, for intervenor.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which affirmed an order of the Court of Common Pleas of Lehigh County setting forth standards governing public access to arrest warrant affidavits. *Commonwealth v. Fenstermaker*, 348 Pa.Super. 230, 502 A.2d 181 (1985). The issue of the extent of permissible public access to such affidavits arose following the arrest of Timothy S. Fenstermaker, Edward Grey, and Brent A. Smith, all of whom were arrested pursuant to warrants issued by a magistrate in connection with charges of homicide, rape, indecent assault, conspiracy, and underage drinking. The arrest warrants were issued on the basis of affidavits of probable cause executed by a police detective.

After arraignment of the accused, but before preliminary hearings had commenced, Call-Chronicle Newspapers, Inc. (hereinafter Call-Chronicle) presented to the Court of Common Pleas a motion for leave to intervene [1] in the case and a motion for permission to inspect and copy the affidavits of probable cause upon which the arrest warrants had been issued. In the latter motion, the Call-Chronicle averred that the magistrate had denied the paper's request to inspect and copy the affidavits.

The motion for leave to intervene was granted, and, with respect to the motion for leave to inspect and copy, an order was entered which recognized a presumptive right of public access to affidavits of probable cause but which permitted such affidavits to be sealed against inspection under limited circumstances. Specifically, the Court of Common Pleas held that a magistrate must permit inspection of affidavits of probable cause unless there has been filed by the District Attorney or defense counsel a certified statement setting forth reasons that public inspection should not be allowed. Such asserted reasons might include claims that prejudice to the defendant or to other persons would result from public dissemination of the document. The Court of Common Pleas further held that, in the event that the requisite certified statement has been filed by the District Attorney or defense counsel, the magistrate shall seal the affidavit of

1. The filing of a motion to intervene in a criminal case by the news media has long been recognized by this Court as an appropriate means of raising assertions of public rights of access to information regarding criminal case proceedings. *Capital Cities Media, Inc. v. Toole,* 506 Pa. 12, 22–23, 483 A.2d 1339, 1344 (1984) (intervention by news media is in accordance with this Court's "well-established and strongly held" views, and is "not only adequate but highly preferable" as a means of obtaining review of alleged abridgments of the public's rights to information and access) (Chief Justice Nix, writing for a unanimous Court); *Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980), cert. denied, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980). Intervention of this type may properly be termed *de bene esse,* to wit, action that is provisional in nature and for the limited purpose of permitting the intervenor to file a motion, to be considered separately, requesting that access to proceedings or other matters be granted. Access rights of the news media, and of the general public, are identical in scope. See *Estes v. Texas,* 381 U.S. 532, 540, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543, 549 (1965).

probable cause from public inspection, and that any interested person may appeal to the Court of Common Pleas for a hearing and determination as to whether, under the circumstances of a given case, rights of public access outweigh the rights of the defendant or other individuals threatened by public disclosure. In making that determination, the Court of Common Pleas noted, the affidavit can remain sealed only if other reasonable means are unavailable to protect the interests threatened by disclosure, and, if the prejudicial or damaging information has by then become public, or if the danger of prejudice has since passed, the continued sealing of the document would be unwarranted. The Court of Common Pleas further noted that, if disclosure would result in pretrial publicity, it cannot be assumed that such publicity would automatically render a fair trial impossible.

An appeal was taken to the Superior Court, whereupon the decision of the Court of Common Pleas was affirmed. The Superior Court held that the lower court's decision represented an appropriate accommodation of the respective rights of defendants under the fair trial guarantees of the Sixth Amendment and the rights of the public to gain access to information under the First Amendment. The instant appeal ensued.

It is to be noted at the outset that there has been no assertion in the instant case that arrest warrant affidavits should be open to public inspection prior to an actual arrest having been made. The issue presented, therefore, concerns only access to affidavits supporting arrest warrants that have already been executed. The Commonwealth contends that affidavits of probable cause for arrest frequently contain information that could be prejudicial to a defendant's right to a fair trial, and, thus, that all such affidavits should be closed to public inspection until such time as the guilt determining process has been completed. We do not agree.

The importance of the public having an opportunity to observe the functioning of the criminal justice system has

long been recognized in our courts. Criminal trials in the United States have, by historical tradition, and under the First Amendment, been deemed presumptively open to public scrutiny and this "... presumption of openness inheres in the very nature of the criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973, 987 (1980). As stated by Justice Hugo Black in *In re Oliver,* 333 U.S. 257, 266, 68 S.Ct. 499, 504, 92 L.Ed. 682 (1948), "This nation's accepted practice of guaranteeing a public trial to an accused has its roots in our English common law heritage. The exact date of its origin is obscure, but it likely evolved long before the settlement of our land as an accompaniment of the ancient institution of jury trial."

Indeed, in this Commonwealth, the principle of openness is based not only upon common law tradition, and upon the First Amendment of the Constitution of the United States, but also upon Article I, sections 9 and 11 of the Pennsylvania Constitution. Article I, section 9 provides, "In all criminal prosecutions the accused hath a right to ... a speedy public trial ...," and Article I, section 11 states, "All courts shall be open." See *Commonwealth v. Contakos,* 499 Pa. 340, 344, 453 A.2d 578, 580 (1982) (plurality opinion, with two Justices concurring in the result) ("We are mindful ... of our virtually unbroken history of public trials and openness in criminal trials."; trial court erred in excluding public from courtroom during portions of criminal trial proceedings).

The nature of criminal law is such that it punishes offenses against the collective public, *Commonwealth v. Bovaird,* 373 Pa. 47, 55, 95 A.2d 173, 176 (1953), and, accordingly, members of the public have an interest in observing criminal justice processes to be assured that offenses perpetrated against them are dealt with in a manner that is fair to their interests, and fair to the interests of the accused. In *Contakos,* 499 Pa. at 344, 453 A.2d at 579–580, considerations governing public observation of criminal justice proceedings were set forth as follows:

The historical basis for public trials and the interests which are protected by provisions such as Pennsylvania's open trial mandate have been well researched and discussed in two recent opinions of the United States Supreme Court, *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), and *Richmond Newspapers, Inc. v. Virginia*, supra, and can be briefly summarized as follows: generally, to assure the public that justice is done even-handedly and fairly; to discourage perjury and the misconduct of participants; to prevent decisions based on secret bias or partiality; to prevent individuals from feeling that the law should be taken into the hands of private citizens; to satisfy the natural desire to see justice done; to provide for community catharsis; to promote public confidence in government and assurance that the system of judicial remedy does in fact work; to promote the stability of government by allowing access to its workings, thus assuring citizens that government and the courts are worthy of their continued loyalty and support; to promote an understanding of our system of government and courts.

These considerations, which were applied by the United States Supreme Court in its analysis of the First and Sixth Amendments in *Gannett* and *Richmond Newspapers* apply equally to our analysis of Pennsylvania's constitutional mandate that courts shall be open and that an accused shall have the right to a public trial.

Although the instant case does not involve the issue presented in *Contakos*, to wit, the propriety of limitations upon public access to the courtroom itself, and, thus, provisions of the Pennsylvania Constitution heretofore cited which call for public trials and open courts are not, in a strict sense, directly controlling as to the issue presented, many of the same considerations command recognition of a common law right of access to the affidavits sought by Call-Chronicle. Specifically, from a policy standpoint, public inspection of arrest warrant affidavits would serve to discourage perjury in such affidavits, would enhance the per-

formance of police and prosecutors by encouraging them to establish sufficient cause before an affidavit is filed, would act as a public check on discretion of issuing authorities thus discouraging erroneous decisions and decisions based on partiality, and would promote a public perception of fairness in the arrest warrant process. Indeed, the salutary effects of openness in this aspect of the criminal justice system are clear, and, as noted in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 572, 100 S.Ct. at 2825, 65 L.Ed.2d at 986, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."

The tradition of keeping proceedings and records of the criminal justice system open to public observation is founded in common law right, and, as stated in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579 (1978) (footnotes omitted), "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." There is a "presumption—however gauged—in favor of public access to judicial records." *Id.* at 602, 98 S.Ct. at 1314, 55 L.Ed.2d at 582. See also *United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981) (common law right of the public to inspect and copy judicial records antedates the Constitution and has been justified on grounds of the public's right to know and the public's right to open courts).

The threshold inquiry in a case such as this where a common law right of access is asserted is whether the documents sought to be disclosed constitute public judicial documents, for not all writings connected with judicial proceedings constitute public judicial documents. Certainly, transcripts of bench conferences held in camera, working notes maintained by the prosecutor and defense counsel at trial, and numerous other examples of non-public writings may be cited. It is clear, however, that documents that are filed with magistrates constitute "judicial" documents, for magistrates (i.e., "justices of the peace") are part of the

Commonwealth's unified judicial system, Pa. Const., Art. 5, sec. 1, and magistrates are by statutory definition considered to be "courts," 18 Pa.C.S.A. § 103. Further, documents upon which a magistrate bases a decision to issue an arrest warrant are clearly judicial in character, for the decision to issue a warrant is itself a judicial one reflecting a determination that the affidavits and the information contained therein provide a sufficient basis upon which to justify an arrest.

As to whether documents deposited with magistrates are to be deemed "public" in nature, there are, in the case of arrest warrant affidavits, several factors to be taken into account. In addition to the policy considerations discussed supra which favor regarding such affidavits as accessible to the public, it is significant to note that arrest warrant affidavits are "filed" to become a part of the permanent record of the case, and, as filed documents, their "public" character is enhanced. Under the Pennsylvania Rules of Criminal Procedure, the "filing" of arrest warrant affidavits is clearly contemplated, for Pa.R.Crim.P. 101 A(a) provides, "The District Attorney of any county may require that criminal complaints, *arrest warrant affidavits,* or both *filed* in the county by police officers, as defined in these rules, have the approval of an attorney for the Commonwealth prior to *filing.*" (Emphasis added). Further, Pa.R. Crim.P. 146 provides that, when a defendant is held for court by an issuing authority, the issuing authority shall transmit to the proper court a number of items including the original complaint, the summons or the *warrant of arrest* and its return, and "all affidavits *filed* in the proceeding...." (Emphasis added). Additional basis for the conclusion that arrest warrant affidavits are writings filed as part of the permanent public record of a case can be discerned from the fact that, at any hearing on a motion challenging an arrest warrant, no evidence is admissible to establish probable cause other than the affidavits sworn to before the issuing authority. Pa.R.Crim.P. 119. Based upon these considerations, the affidavits in question cannot

be regarded as private documents, but rather must be taken to be part of the official public case record. This is appropriate, too, in light of the role of such affidavits in triggering criminal proceedings against a defendant.

Reported decisions by the courts of this Commonwealth regarding the common law right of access to judicial records and proceedings are sparse, no doubt as a result of the fact that cases involving questions of public access to such matters have often been regarded as governed by specific constitutional provisions. See *Commonwealth v. Contakos,* supra (exclusion of public from the courtroom during testimony of a prosecution witness tested under constitutional fair trial guarantees and under provisions of Pennsylvania Constitution mandating public trials and open courts); *Commonwealth v. Buehl,* 316 Pa.Super. 215, 462 A.2d 1316 (1983) (closure of pretrial hearing in criminal case limited by First Amendment access rights of the public). In the instant case, the Superior Court reasoned that a per se rule denying public access to all arrest warrant affidavits would be violative of the First Amendment. Because we hold that a common law right exists which would be infringed by a per se rule of treating all arrest warrant affidavits as sealed from public inspection, we do not reach the First Amendment claim. See generally *Commonwealth v. Allsup,* 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978) (resolution of constitutional question should be avoided when there exists a non-constitutional ground for decision).

The common law right to inspect public documents, referred to in *Nixon v. Warner Communications, Inc.,* supra, is recognized in this Commonwealth, but the extent of that right has not been delineated with specificity. See *Wiley v. Woods,* 393 Pa. 341, 349–350, 141 A.2d 844, 848–849 (1958) (collecting cases). As stated in *Mooney v. Temple University Board of Trustees,* 448 Pa. 424, 429 n. 10, 292 A.2d 395, 398 n. 10 (1972), "There is a well-established right at common law to inspect public records upon request in a reasonable manner." Our decisions have expressed

uncertainty, however, as to the nature of the interest that one asserting a common law right to inspect public documents must possess. *Id.; McMullen v. Wohlgemuth,* 453 Pa. 147, 160, 308 A.2d 888, 895 (1973), appeal dismissed, 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 (1974); *Wiley v. Woods,* supra. In some cases, it has been required that the party seeking to inspect public documents have a personal or property interest in the matter sought to be disclosed, while in other cases a party's mere interest as a citizen has been regarded as sufficient to support inspection of such documents. *Id.* In addition, certain cases have placed importance upon the type of public entity from which disclosure is sought, for example, executive, or administrative, and upon the purposes underlying the request for disclosure. *Id.* An examination of these cases provides little meaningful guidance, however, in resolution of the issue presented by the instant case, for none involve comparable disclosure issues, and, indeed, disclosure of arrest warrant affidavits involves unique considerations not presented in cases where Sixth Amendment fair trial guarantees do not come into play as a factor to be weighed in the disclosure decision.

In addition, disclosure issues under the cases cited supra have often been decided under the Pennsylvania Right to Know Act, Act of June 21, 1957, P.L. 390, § 1 et seq., 65 P.S. § 66.1 et seq., rather than on the basis of the common law rights acknowledged in the decisions. The Right to Know Act provides a right of access to public records maintained by agencies in the Commonwealth. In cases where provisions of this statute have been applied, the common law right to inspect public documents has been regarded as superseded by the provisions of the Right to Know Act, insofar as public inspection of records of agencies is concerned. *Mooney v. Temple University Board of Trustees,* 448 Pa. at 429–430 n. 10, 292 A.2d at 398 n. 10; *McMullan v. Wohlgemuth,* 453 Pa. at 160, 308 A.2d at 895. The Right to Know Act has no application to the present

case, however, because it pertains only to agencies rather than to the judiciary. 65 P.S. § 66.1(1).

When the public entity from which disclosure is sought is the judiciary, the common law right to inspect documents has been broadly construed, though the right has not been held to be absolute. As stated in *Nixon v. Warner Communications, Inc.*, 435 U.S. at 597–599, 98 S.Ct. at 1311–1313, 55 L.Ed.2d at 579–580 (footnote omitted),

> American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies ... and in a newspaper publisher's intention to publish information concerning the operation of government....
>
> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes....
>
> It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. The few cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. In any event, we need not undertake to delineate precisely the contours of the common-law right....

■■■ Accordingly, we are persuaded that the instant case presents a situation where the common law right of access may appropriately be asserted, and that the interests of the public in observing the functioning of the criminal

justice system are sufficient as a basis upon which to assert such a right. As stated, however, in *Nixon v. Warner Communications, Inc.*, supra, the right to inspect judicial documents is not absolute, and courts do have supervisory power over their records and files. Where the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the document to public inspection, access to the document may be denied.

■ In the case of arrest warrant affidavits, numerous factors may enter into consideration as to whether, in any given case, the presumption of openness has been rebutted, including, inter alia, Sixth Amendment fair trial rights of the defendant that might be affected by pretrial publicity arising from disclosure of the affidavits, the need of the prosecution to protect the safety of informants, the necessity of preserving the integrity of ongoing criminal investigations, the availability of reasonable alternative means to protect the interests threatened by disclosure, etc. It should be noted, however, with respect to Sixth Amendment considerations, that in the usual case pretrial publicity does not automatically render a fair trial impossible. See *Commonwealth v. Romeri*, 504 Pa. 124, 132, 470 A.2d 498, 502 (1983) ("[E]ven if there has been extensive pre-trial publicity, a fair trial is not necessarily precluded."), cert. denied, 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984).

■ The decision regarding access to arrest warrant affidavits is one best left to the sound discretion of a trial court, and, in view of the presumption of openness attached to such documents, it is inconsistent to permit the sealing of such affidavits upon the *mere* request of a District Attorney or defense counsel. Thus, the procedures established by the courts below, which provided for sealing to occur upon the mere filing of a request therefor with a magistrate, cannot be upheld. When arrests have been made

pursuant to warrants, the supporting affidavits must be deemed open to public inspection until such times as District Attorneys or defense counsel have obtained court orders that the affidavits be sealed from public access. This places upon those wishing to seal affidavits a burden of moving swiftly to obtain the necessary court orders, but it is a burden that is necessary in order to accord due recognition to the common law right of the public to secure access to such documents. The decision of the trial court shall be appealable and shall be rendered following a hearing, and the record shall contain an articulation of the factors taken into consideration in reaching a determination as to sealing of the affidavits.

In cases where sealing of affidavits is regarded as desirable, District Attorneys, inasmuch as they are in a position to determine prior to arrest the contents of the supporting affidavits (Pa.R.Crim.P. 101A(a), supra), or defense counsel, in the event that defense counsel have been retained and have formed a belief that the affidavits should be sealed, will, no doubt, seek to obtain the necessary court orders even prior to the actual arrests having been made. In this manner, the possibility will be diminished that, after an arrest has been made, the public will go to the magistrate's office and inspect the affidavits before a realistic opportunity to obtain a court order sealing the documents has been afforded. That possibility, however, is of rather minor concern, for the majority of arrests do not attract sufficient public attention as to invite public inquiry into the affidavits, and, further, the common law right of the public to inspect such documents must not be required in every case to yield as a result of the fact that there are a small number of cases where sealing of the affidavits may be warranted. Accordingly, in the instant case, when Call-Chronicle requested that the magistrate grant access to the arrest warrant affidavits in question, access should have been granted.

Order reversed.

LARSEN, J., joins the Majority Opinion and filed a concurring opinion.

NIX, C.J., filed a concurring opinion joined by HUTCHINSON, J.

McDERMOTT, J., concurs in the result only.

LARSEN, Justice, concurring.

I join the majority opinion. Additionally, I find further support for the principle of free public access to arrest warrant affidavits and other documents filed in criminal proceedings in Article I, section 7 of the Pennsylvania Constitution. That section provides:

> The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature *or any branch of government, and no law shall ever be made to restrain the right thereof.* The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty....

NIX, Chief Justice, concurring.

I can agree with the rule finally announced by the majority which treats the affidavit supporting warrants of arrest that have been executed as being deemed public and thus accessible to media unless a court order is obtained requiring it to be sealed. I cannot join the opinion however because of my disagreement with some of the analysis employed to reach the result, particularly the unnecessary and unfortunate reliance upon *Commonwealth v. Contakos*, 499 Pa. 340, 453 A.2d 578 (1982), a plurality opinion, which in my judgment was wrongly decided. *See Commonwealth v. Contakos, supra*, 499 Pa. at 353–357, 453 A.2d at 584–586 (Nix, J., dissenting, joined by Hutchinson, J.).

HUTCHINSON, J., joins in this concurring opinion.