## Commonwealth v. Gallman

*Emily Zimmerman,* for respondent.
*Joseph C. Santaquida,* for defendant.
*Burt M. Rubin,* for intervening party.

FITZGERALD III, *J.,* June 23, 2000—Before this court are motions by WPVI-TV to proceed as an intervening party, and to be allowed access to and the right to reproduce or copy a certain videotaped "confession" given by the defendant, James Gallman, to Philadelphia police officers prior to trial, and which was introduced in the Commonwealth's case in chief during the defendant's trial.

The issues have been argued and briefed by the parties.

By stipulation, the defendant, James Gallman, via trial counsel, Joseph Santaguida, Esquire, joins with the Commonwealth in opposing the motions of WPVI-TV. Counsel for defendant did not formally appear at the hearings regarding the motions and did not file any formal brief.

## BRIEF SUMMARY OF TRIAL

The defendant, James Gallman was arrested on or about February 1, 1999, and charged with the murder of his 2-year-old stepson, Vladmir Marchuk, who died on January 31, 1999, as a result of receiving "blunt trauma" blows to the abdomen, while the defendant was caring for him.

On August 4, 1999, a bench trial was conducted before this court, and the defendant was found guilty of third-degree murder. On November 9, 1999, the defen-

dant was sentenced to a term of incarceration of not less than seven years, nor more than 20 years at a state correctional institution. Thereafter, no direct appeal was taken by the defendant.

After being arrested, the defendant gave a statement to Homicide Detective Michael Walter, wherein he admitted to supervising the child, and attempting to "discipline" him by administering corporal punishment. The defendant stated that he struck the child four times, and hit him "harder than normal."

The defendant's statement was reduced to writing and signed by the defendant, and admitted into evidence. After executing the written statement, the defendant was re-interviewed, and the statement was reviewed by Detective Walter and the defendant together, and the defendant admitted that the statement was true and voluntarily given. This "statement," that is, the review of the written statement, was videotaped by the police, with the defendant's consent, and was also admitted into evidence, and shown to the court, acting as trier of fact. It is this videotaped "confession" that is the subject of the within litigation.

WPVI-TV was given access to the videotaped statement, for the purpose of viewing it, but moves this court to allow it to copy the tape for purposes of dissemination of the tape as it relates to the issue of the use of videotaped confessions at trial.

## I. *WPVI-TV's Application To Intervene*

The Commonwealth, in its brief, does not address the issue of the right of WPVI-TV to intervene. Furthermore, as a public news agency, WPVI-TV has a right to at-

tempt to intervene in order to attempt to obtain relief. In matters affecting the purported right of the public, and, or, the news media to access and possibly subsequently disseminate court documents, or, other information obtained from evidence admitted at a criminal trial, representatives of the news media have frequently filed a "petition to intervene" in order to obtain judicial relief. See *Commonwealth v. Lambert,* 723 A.2d 684 (Pa. Super. 1998); *Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980); *Capital Cities Media Inc. v. Toole,* 506 Pa. 12, 483 A.2d 1339 (1984).

Generally, whether to allow intervention or not is a matter of the trial court's discretion, and the trial court's decision will not normally be disturbed absent a manifest abuse of discretion. Further, the trial court will not be found to have abused its discretion unless the record reflects that the judgement exercised by the trial court was manifestly unreasonable or the result of partiality, prejudice, bias, or ill will.

In the instant matter, this court finds that the application of WPVI-TV to intervene is meritorious. The sought for videotaped confession is a "judicial document" or "public record," subject to the public's asserted right to inspect and, or, copy. See *Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414 (1987); *United States v. Criden (I),* 648 F.2d 814 (3d Cir. 1981); See also, *In re Application of National Broadcasting Company Inc.,* 635 F.2d 945 (2d Cir. 1980).

Accordingly, WPVI-TV's application to intervene is granted.

## II. *WPVI-TV's Motion To Copy the Videotaped "Confession," Which Was Introduced at Trial*

This court is not aware of any Pennsylvania case decision on the specific issue of the release of a videotaped "confession" of a criminal defendant. However, videotapes admitted into evidence at trial have been the subject of litigation regarding the public's (media's) right to access.

In *United States v. Criden (I),* 648 F.2d 814 (3d Cir. 1981), the Third Circuit Court of Appeals reversed the United States District Court for the Eastern District of Pennsylvania, and ruled that television networks were entitled to copy video and audio "surveillance" tapes of purported criminal activity between criminal defendants and third parties, which were admitted as evidence at trial, for the purpose of disseminating the tapes and information to the public. The basis for the decision was:

(1) That there was a strong common-law presumption of access, and there was an educational and informational benefit to the public by release of the evidence which raised significant issues of public interest. See *Nixon v. Warner Communications Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978);

(2) That there was a strong presumption that material introduced at trial should be made reasonably accessible to the public in a manner suitable for copying and dissemination;

(3) That the rebroadcast of the videotapes of the (criminal) defendants' activities, which were admitted into evidence and played for the jury, could not be appropriately considered as "enhanced punishment" of the defendants;

(4) That the rebroadcast of evidence already admitted into trial was far less likely to create a "circus or stadium atmosphere" than concurrent (to trial) broadcasting of video evidence;

(5) That although the rebroadcast of videotaped evidence could serve to prejudice the potential jurors in defendants' future litigation, this problem did not outweigh the public's interest in dissemination of the court materials where the future use of voir dire of potential jurors would protect the defendants' rights to a fair trial;

(6) That possible harm or prejudice to third parties could be addressed by judicious excision of the videotapes. (The District Court's initial excision of the videotapes was deemed to be excessive, and the Third Circuit Court of Appeals subsequently reviewed the tapes and permitted the showing of more third party activity than the District Court had allowed. See *Criden (II)*, 681 F.2d 919 (3d Cir. 1982).

In *U.S. v. Martin*, 746 F.2d 964 (3d Cir. 1984), the District Court had refused to allow the media to copy audiotapes that were admitted into trial, in part because the "legitimate public interest in the [criminal] proceedings" did not rise to the level of extraordinary public interest, as it did in *Criden (I), supra.* The Third Circuit rejected this argument, noting that "we do not believe that the court intended that this should be an important factor in the balancing process." However, the *Martin* court did not altogether dismiss the degree of the public's interest as a factor in deciding whether to allow access and copying of audiotaped evidence, and, additionally noted that the *Martin* case involved the prosecution of local law enforcement personnel by federal authorities,

and involved police officers testifying against their fellow officers, and therefore was a "rare case" of "extraordinary moment." *U.S. v. Martin, supra* at 969.

Further, the Third Circuit noted in *Martin,* that a most troubling aspect of these types of cases was the factor relating to the effect that release and dissemination of evidence would have on subsequent proceedings. Citing, with approval, *Criden (I), supra,* the court noted that the tapes had been played in open court and that none of the participants in the tapes were defendants currently awaiting trial.

## THE PURPORTED RIGHTS OF THE PUBLIC AND WPVI-TV ARE NOT CONSTITUTIONAL IN NATURE

In criminal proceedings, as in the instant case, the issue is frequently framed as one of competing interests between the defendant's rights to a fair trial and the public's right to access under the First Amendment. However, although the public may have a constitutional right to access to criminal proceedings, the right is not an absolute or unqualified right. *Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980).

The Constitution of the Commonwealth of Pennsylvania, Article 1, Section 11, stating that "all courts shall be open," may place an added responsibility on Pennsylvania courts to protect the public's right of access. However, in *Hayes, supra,* the court noted that the protections of Article 1, Section 11, were considered to be not greater than those protected by Article 1, Section 9, (guarantee of a speedy trial). The primary concern of these state constitutional provisions are to provide the

accused with protection against star-chamber proceedings.

In *Philadelphia Newspapers Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425 (1978), the Pennsylvania Supreme Court noted that there was no "absolute right of access to every [criminal] court proceeding, or to all information in the possession of the government or the courts." *Id.* at 502, 387 A.2d at 434.

With regard to "access" the *Jerome* court stated that access to any court proceeding should not be limited for any reason less than the compelling state obligation to protect constitutional rights of criminal defendants, and the public interest, to fair, orderly, prompt and final disposition of criminal proceedings. *Jerome,* 478 Pa. at 503, 387 A.2d at 434.

Just as the right to access is not absolute, there is also no constitutional right of the public, via the media, to have unfettered access to court evidence. However, there is a strong presumption in favor of the public's common-law right to inspect and copy "judicial records." *Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *U.S. v. Criden (I), supra.*

Accordingly, this court does not grant any relief pursuant to constitutional claims, but bases its decision on the principles enunciated in the cases cited herein, (particularly the factors set forth in *Criden (I), supra; Martin, supra; Fenstermaker, supra*).

The Commonwealth argues that videotaped confessions are a developing area of law, and that there is a compelling public interest in denying intervenor's request, in that future defendants may be discouraged from consenting to videotaped confessions.

In *Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414 (1987); *P.G. Publishing Company v. Commonwealth,* 532 Pa. 1, 614 A.2d 1106 (1992), legitimate law enforcement interests must be considered in weighing a request for documents. Further, the press does not have any right to access information which is superior to the general public's right. *Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), quoting *Estes v. Texas,* 381 U.S. 532, 588-89, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), *rehearing denied,* 382 U.S. 875 (1965); *Commonwealth v. Davis,* 431 Pa. Super. 42, 50, 635 A.2d 1062, 1066 (1993).

In the instant case, the transcript of the defendant's confession is readily available. Arguably, it may be that there is no singular interest in the defendant's videotaped confession.

The Commonwealth essentially argues that the media's right of access to the tape is limited, that there is no legitimate public interest in the tape, that the interest of WPVI-TV is a private interest (to attract viewers), and, that whatever interest WPVI-TV does have is outweighed by the Commonwealth's law enforcement agencies need to obtain videotaped confessions, unhampered by possible chilling effects which the rebroadcast of the taped confession may engender.

This court considers the Commonwealth's argument sound, but considers the possible chilling effect argument to be but one of the several factors to be considered.

## CONCLUSION

This court also notes that its rulings within the instant case are, of course, applicable to this case only, and are based upon the unique facts of the case. This court makes no attempt to rule upon the appropriateness of the general policy which the Commonwealth (district attorney's office) has instituted or may wish to institute.

Further, the taking of videotaped confessions and their introduction at trial is a very recent development, and to this court's knowledge, limited to the prosecution of homicide cases. The appropriateness of the taking of videotaped confessions in all criminal matters appears to be a matter of continuing public debate.

Accordingly, upon consideration of the pleadings, briefs, and arguments of the parties, and the history of defendant James Gallman's criminal case, this court finds that WPVI-TV's request should be granted, and enters the following findings:

(1) The videotaped confession is a "judicial document" or a "public record;"

(2) There is a common-law presumption favoring the granting of WPVI-TV's request;

(3) The defendant's trial has terminated, and in fact this was a post-trial request, and possible adverse effects on future proceedings are minimal. As previously noted, the defendant did not pursue any appeal;

(4) This videotaped conversation does not involve third parties;

(5) Although the public interest in the defendant's specific case may or may not be of extraordinary moment, there is a public interest in whether or not confessions should be videotaped, and a concurrent interest in observing and understanding the process;

(6) The release of the tape is not an enhanced punishment of the defendant;

(7) A rebroadcast of the tape is not likely to impede the court's administration of justice and does not prejudice the defendant's right to a fair trial, since the tape was admitted into evidence and shown to the jury, and the criminal trial had been terminated;

(8) The Commonwealth's interest in obtaining videotaped confessions and its concern that release of the tape will have a possible chilling effect upon the securing of future videotaped confessions does not outweigh factors favoring release of the tape to WPVI-TV;

(9) The granting of relief is not based upon any federal or state constitutional right of WPVI-TV or the public, but is based upon common-law principles.

Accordingly, WPVI-TV's motion for access to, and the right to copy, the videotaped confession is granted.

## ORDER

And now, June 23, 2000, upon consideration of the motion of WPVI-TV for permission to copy videotaped evidence introduced at trial and the responses thereto by the Commonwealth and the defendant, it is hereby ordered and decreed that WPVI-TV is granted leave to proceed as an intervening party.

Further, it is ordered and decreed that the motion is granted. The Commonwealth of Pennsylvania, by and through the district attorney's office of Philadelphia County, is hereby ordered and directed to make available to WPVI-TV for copying the videotaped evidence introduced at the trial held in this matter. The intervening party, WPVI-TV, to pay reasonable costs.